En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico     Recurrido     .V  Gualberto Negrón Martínez, Sonia I. Torres Torres     Acusados-Peticionarios | Certiorari  TSPR-98-15 |
|---|---|

Número del Caso: CE-93-641

Abogados Parte Demandante: Lcdo. José A. Andréu Fuentes
Lcdo. Héctor R. Crespo Milian

Abogados Parte Demandada: Hon. Carlos Lugo Fiol
Procurador General

Abogados Parte Interventora:

Tribunal de Instancia: Superior

Juez del Tribunal de Primera Instancia: Hon. Aida N. Molinary De la Cruz

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 2/27/1998

Materia: Criminal

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                    CE-93-641

Gualberto Negrón Martínez
y otros

    Acusados


SENTENCIA
(En Reconsideración)


San Juan, Puerto Rico, a 27 de febrero de 1998.

El 24 de marzo de 1993, agentes del orden público diligenciaron una orden de confiscación contra la residencia de los peticionarios Gualberto Negrón Martínez y otros.[1] Durante ese trámite, los agentes encontraron material relacionado al juego ilegal de "bolita". Correspondientemente, el Minis-terio Público le imputó a los peticionarios haber infringido la sección 10 de la Ley Núm. 220 de 15 de mayo de 1948, según enmendada, 33 L.P.R.A. sec.

---

[1] Ello como consecuencia de que el 4 de febrero de 1993, al diligenciar una orden de allanamiento en dicha propiedad, las autoridades ocuparon material relacionado con el juego de bolita, cuya evidencia fue subsiguientemente suprimida casi un año después por el foro de instancia mediante Resolución de 7 de febrero de 1994. Dicha resolución fue confirmada por este Tribunal en el caso de Pueblo v. Negrón Martínez, Op. de 30 de abril de 1997, 97 JTS 53.

1247.[2] Luego de la vista preliminar, celebrada el 26 de abril de 1993, el tribunal de instancia determinó que no existía causa probable para sostener los cargos, por razón de que el registro efectuado como parte de la confiscación era patentemente ilegal. El Ministerio Público solicitó una vista preliminar en alzada, la cual se celebró el 16 de julio de 1993. En esa vista, el tribunal encontró causa probable contra los acusados, pero deliberadamente no consideró la legalidad del registro por entender que tal evaluación era improcedente en esa etapa preliminar.

El Ministerio Público presentó cargos contra los peticionarios de epígrafe y, el 18 de agosto de 1993, éstos presentaron una moción para la supresión de evidencia a tenor con lo dispuesto por la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234. En la moción arguyeron que la evidencia ocupada por el Estado mientras se diligenció la orden de confiscación era inadmisible pues ésta fue ejecutada en contravención a la Sección 10 del Artículo II de la Constitución de Puerto Rico y la Cuarta Enmienda de la Constitución de Estados Unidos.

---

[2]Reza la primera sección de la Ley Núm. 220, supra,:

"Por la presente se declara estorbo público los juegos generalmente conocidos como `bolita´, `bolipul', combinaciones clandestinas relacionadas con los `pools´ o bancas de los hipódromos de Puerto Rico y loterías clandestinas en el Estado Libre Asociado de Puerto Rico y su jurisdicción territorial y marítima."

Por su parte, dispone la sección 10 de esa Ley:

1256. Dueño, administrador, etc., de juegos prohibidos; juicio por tribunal de derecho

Todo dueño, apoderado, agente, encargado, director o administrador de los juegos prohibidos por las secs. 1247 a 1257 de este título será reo de delito grave, y será arrestado inmediatamente, dándose traslado del caso sin demora al fiscal con jurisdicción, y convicta que fuere dicha persona, será castigada con pena de presidio que no será menor de un (1) año ni mayor de diez (10) años; Disponiéndose, que todos los juicios por infracción a la presente sección se celebrarán por tribunal de derecho exclusivamente; y Disponiéndose, además, que toda persona que fuere convicta de una infracción a las disposiciones de esta sección no podrá acogerse a los beneficios de las secs. 1026 a 1029 del Título 34.

El tribunal de instancia celebró vista para dilucidar la solicitada supresión. Mediante prueba testifical, el Ministerio Público sostuvo que la orden de confiscación fue emitida el 24 de marzo de 1993 por el Fiscal Especial de la División de Confiscaciones del Departamento de Justicia, a nombre del Secretario de Justicia, y, que, al amparo de lo dispuesto por el artículo 3(1)(c) de la Ley Núm. 3, supra, se emitió la orden sin que hubiese mediado autorización judicial. El fiscal especial testificó que la orden de confiscación estaba fundamentada en que, el 4 de febrero de 1993, se diligenció una orden de allanamiento en los predios de la residencia de los peticionarios, donde se ocupó material involucrado con el juego ilegal de la bolita. Expuso que los peticionarios fueron denunciados criminalmente por haber estado envueltos en la dirección del juego ilegal, en violación a la Ley Núm. 220, supra. Expresó que esa denuncia estaba aún pendiente al momento de expedir la orden de confiscación. El Estado también presentó testimonio de que el mismo día de la emisión de la orden de confiscación, fiscales y agentes de la policía, luego de identificarse y explicar su propósito a los peticionarios, armados con la orden, entraron a la residencia para incautar la misma. Estos entonces procedieron a desalojar de la residencia a los peticionarios, y a tomar posesión tanto de la propiedad inmueble como de la mueble situada en los predios. Entre el material mueble confiscado se encontró material relacionado al juego ilegal de la "bolita".

Luego de evaluar la prueba presentada por las partes, el tribunal de instancia denegó la moción de supresión mediante resolución emitida el 8 de octubre de 1993. Ese foro fue del criterio de que la confiscación estaba amparada en una ley especial que faculta al Estado a incautar propiedad sin que medie orden judicial, por lo que el registro e incautación de evidencia encontrada en los predios confiscados no fue obtenida de manera repulsiva a las protecciones constitucionales pertinentes.

Inconformes con esa determinación, los peticionarios acudieron a este Tribunal mediante petición de certiorari presentada el 26 de octubre de 1993. El recurso planteó dos errores, los cuales exponemos a continuación:

PRIMER ERROR: ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL DECLARAR NO HA LUGAR LA MOCION DE SUPRESION DE EVIDENCIA, Y POR CONSIGUIENTE, AL DETERMINAR QUE EN EL PRESENTE CASO EXISTIO ALGUNAS DE LAS CIRCUNSTANCIAS PARTICULARES QUE VALIDAN UN REGISTRO Y ALLANAMIENTO SIN ORDEN JUDICIAL.

SEGUNDO ERROR: ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE LA CONFISCACION LLEVADA A CABO EN EL PRESENTE CASO, Y POR ENDE EL REGISTRO Y OCUPACION DE LA EVIDENCIA, NO FUE UNA ILEGAL EN VIOLACION A LA SECCION 10 DEL ARTICULO

II DE LA CONSTITUCION DEL ESTADO LIBRE ASOCIADO Y LA CUARTA ENMIENDA DE LA CONSTITUCION DE LOS ESTADOS UNIDOS.

Expedimos el recurso solicitado el 27 de octubre de 1993. El 18 de febrero de 1994 acogimos una solicitud de las partes peticionarias de que se considerase su petición de certiorari como su alegato en el caso.[3] El Ministerio Público sometió su alegato el 28 de marzo de 1994. Perfeccionado el recurso, el 30 de abril de 1997 emitimos sentencia para confirmar la Resolución recurrida. En la misma expusimos que, al amparo de la Regla 5(b) del Reglamento de este Tribunal, y en la ausencia de una mayoría de los jueces interviniendo para revocar la Sentencia recurrida, al producirse un empate en la votación, se confirmó la misma.[4] Las partes peticionarias radicaron una moción de reconsideración el 15 de mayo de 1997 y el Ministerio Público se opuso a la misma por medio de un escrito sometido el 23 de mayo de 1997.

En reconsideración, revocamos la resolución emitida por el Tribunal de instancia el 8 de octubre de 1993 y decretamos que la evidencia inculpatoria descubierta como

---

[3]Véase "Moción Solicitando se Permita Someter Petición de Certiorari en Sustitución de Alegato" presentada por las partes peticionarias el 27 de enero de 1994.

[4]El Juez Asociado señor Rebollo López, la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Hernández Denton revocarían. El Juez Asociado señor Negrón García, el Juez Asociado señor Fuster Berlingeri y el Juez Asociado señor Corrada del Río confirmarían. El Juez Presidente señor Andréu García se inhibió. Véase sentencia y

resultado de la confiscación efectuada es inadmisible en evidencia.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emite Opinión concurrente a la cual se unen la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Hernández Denton. El Juez Asociado señor Corrada del Río emite Opinión concurrente. El Juez Asociado señor Negrón García emite Opinión disidente. El Juez Asociado señor Fuster Berlingeri emite Opinión disidente. El Juez Presidente señor Andréu García inhibido.


Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Peticionario

v.                CE-93-641

Gualberto Negrón Martínez
y otros

Acusado-recurrido

**OPINIÓN CONCURRENTE EMITIDA, EN ETAPA DE RECONSIDERACION, POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ, A LA CUAL SE UNEN LOS JUECES ASOCIADOS SEÑORA NAVEIRA DE RODÓN Y SEÑOR HERNÁNDEZ DENTON**

San Juan, Puerto Rico, a 27 de febrero de 1998

En el día de hoy <u>reiteramos</u> el criterio que sostuviéramos el pasado 30 de abril de 1997 a los efectos de que procede decretar la supresión de la evidencia incautada por el Estado en la residencia de los peticionarios Negrón Martínez el día 24 de marzo de 1993.

Ello, llana y sencillamente, debido a que, como expresáramos en nuestra Opinión del 30 de abril de 1997, "...consideraciones de orden público, básicas a nuestro sistema democrático de gobierno, impiden que se le permita al Estado sostener la legalidad de una confiscación civil a base de evidencia previamente suprimida, en un procedimiento criminal relacionado, por ser la misma producto de un allanamiento ilegal."

Cualquier fundamento de índole constitucional, utilizado en el día de hoy por otros miembros del Tribunal con el propósito de sostener la ilegalidad de dicha incautación, resulta ser totalmente innecesario. Dicho curso de acción, dados los hechos particulares del presente caso, viola una de las normas jurisprudenciales más arraigadas y correctas: aquella que predica la abstención y prudencia judicial ante planteamientos constitucionales cuya consideración no es necesaria para resolver el caso.

## I

El tribunal de instancia determinó que un allanamiento efectuado por agentes del orden público el día <u>4 de febrero de 1993</u> en la residencia del peticionario Negrón Martínez era uno ilegal; razón por la cual procedió a <u>suprimir</u> la evidencia delictiva -- consistente de material relacionado con el juego ilegal de la "bolita"-- ocupada ese día en dicha residencia por los agentes policíacos. Una mayoría de los integrantes de este Tribunal <u>confirmó</u> dicho dictamen judicial mediante Sentencia de fecha 30 de abril de 1997.[5]

En el entretanto, y basándose en la evidencia delictiva que la Policía había ocupado el 4 de febrero de 1993, el <u>24 de marzo de 1993</u> un fiscal del Departamento de Justicia expidió una "orden de confiscación" contra la residencia de Negrón Martínez, amparándose para ello en las disposiciones del Artículo 3(1)(c) de la Ley Uniforme de Confiscaciones[6]. Al diligenciar <u>ese mismo día</u> la referida "orden de confiscación", los agentes del orden público ocuparon, nuevamente, en dicha residencia material relacionado al juego ilegal de la "bolita".

En esta ocasión, el tribunal de instancia declaró <u>sin lugar</u> la moción de supresión de evidencia que radicara la distinguida representación legal de Negrón Martínez. Inconforme, el peticionario acudió ante este Tribunal en revisión -- vía certiorari-- de la mencionada denegatoria. Habiéndose inhibido el señor Juez Presidente, Hon. José A. Andréu

---

[5]    Votaron para <u>confirmar</u> al tribunal de instancia los Jueces Asociados señor Rebollo López, señora Naveira de Rodón, señor Hernández Denton y señor Corrada del Río. El Juez Asociado señor Negrón García <u>disintió</u>. El Juez Presidente señor Andréu García se <u>inhibió</u> y el Juez Asociado señor Fuster Berlingeri <u>no intervino</u>.
[6]    Ley Número 93 del 13 de julio de 1988, 34 L.P.R.A. sec. 1723(a).

García, los restantes seis Jueces de este Tribunal se <u>dividieron</u> tres a tres.[7]  En consecuencia, el 30 de abril de 1997 se emitió una Sentencia <u>confirmatoria</u> de la resolución recurrida que denegó la supresión en cuanto a la evidencia delictiva ocupada el día 24 de marzo de 1993.

Negrón Martínez solicitó <u>reconsideración</u> de dicha actuación judicial. En el día de hoy, una mayoría del Tribunal determina que la actuación del Estado fue ilegal y ordena la supresión de la evidencia incautada.  Dicha posición mayoritaria hoy se obtiene debido al hecho de que uno de los integrantes del Tribunal que el pasado 30 de abril de 1997 fue del criterio que la actuación gubernamental era una legal --el Juez Asociado señor Corrada del Río-- ahora sostiene la ilegalidad de la misma.  Al así hacerlo, el Juez Corrada del Río señala que es <u>inconstitucional</u> el mencionado Artículo 3(1)(c) de la Ley de Confiscaciones "...en tanto en cuanto [el mismo] permite la confiscación de bienes  inmuebles  sin notificación  y   vista previa; ...".

¿Es ello  realmente  necesario  y  correcto?   ¿No se supone que este Tribunal evada entrar a dilucidar la constitucionalidad de un estatuto si el caso puede ser resuelto, de forma correcta, por otros fundamentos?

## II

En la Opinión disidente que emitimos el pasado 30 de abril de 1997 --en la cual sostuvimos que procedía la <u>revocación</u> de la resolución denegatoria de la supresión que solicitó Negrón Martínez en relación con la evidencia delictiva ocupada el día 24 de marzo de 1993, evidencia ocupada a base de la orden de incautación expedida por un fiscal del Departamento de Justicia de Puerto Rico-- señalamos que:

> "Hemos resuelto, de manera enfática, que consideraciones de orden público, básicas a nuestro sistema democrático de gobierno, impiden que se le permita al Estado sostener la legalidad de una confiscación civil a base de evidencia previamente suprimida, en un procedimiento criminal relacionado, por ser la misma producto de un allanamiento ilegal.  Al referirnos a la '*regla de exclusión*', contenida en la Sección 10 del Artículo II de nuestra Constitución, expresamos en <u>Toll</u> v. <u>Adorno Medina</u>, 92 JTS 49, Opinión y Sentencia del 29 de abril de 1992, en lo pertinente, que:

> '[P]odemos decir que la regla de exclusión encarna tres propósitos insitos en el Art. II, Sec. 10.  Primero, disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional ("deterrence").  Se reconoce que este elemento disuasivo realmente es el más fundamental.  Segundo, integridad judicial.  Los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida.  Y tercero, impedir que el gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el gobierno.'

> Además, y como señala el Profesor Ernesto Chiesa, la '*regla de exclusión*' se extiende a '*evidencia derivativa*' que ha sido obtenida como '*fruto*' de evidencia primaria que ha sido obtenida ilegalmente, esto es, '*...a otra evidencia cuyo origen está vinculado estrechamente a la evidencia obtenida originalmente en violación de la protección constitucional*'. [3]  Como resulta obvio, estamos hablando de la llamada doctrina '*del fruto del árbol ponzoñoso*'."

---

[7]     Votaron por <u>confirmar</u> los Jueces Asociados Negrón García, Fuster Berlingeri y Corrada del Río.  Debe recordarse que este último había votado por confirmar la resolución suprimiendo la evidencia delictiva ocupada el 4 de febrero de 1993.

    Votaron para <u>revocar</u> la resolución denegatoria de la supresión solicitada, los Jueces Asociados señor Rebollo López, señora Naveira de Rodón y señor Hernández Denton.

En palabras sencillas, no comprendíamos entonces, ni comprendemos ahora, cómo es posible que alguien resuelva que es legal la ocupación de evidencia delictiva cuando la referida ocupación es el resultado de una orden de incautación que está basada en un allanamiento que ha sido declarado ilegal por tribunal competente. Ese, llana y sencillamente, es el fundamento correcto, desde un punto de vista jurídico, para decretar que la orden de incautación expedida por el Departamento de Justicia en el presente caso, y la subsiguiente ocupación de evidencia delictiva, son nulas e ineficaces. En otras palabras, resulta totalmente innecesario entrar a dilucidar, y resolver, si la disposición en controversia de la Ley Uniforme de Confiscaciones es, o no, constitucional.

Como es sabido, desde tiempos inmemoriales existe la llamada norma de abstención, o autolimitación, judicial a los efectos de que un tribunal deberá evitar entrar a juzgar la constitucionalidad de una ley si está a su alcance resolver el caso ante su consideración por otros fundamentos jurídicos. La deferencia que debe tener el Poder Judicial hacia el Poder Legislativo así lo requiere. Millán Rodríguez v. Muñoz, 110 D.P.R. 610, 618 (1981). Ni aun la excusa de que el caso plantea una cuestión de alto "interés público" ha sido aceptada como justificación para violar la llamada norma de abstención judicial.

Como expresara este Tribunal en E.L.A. v. Aguayo, 80 D.P.R. 552, 599 (1958):

> "Es punto menos que aterradora la visión de una sociedad en la cual jueces nombrados por vida tengan la facultad de juzgar la constitucionalidad de los actos oficiales a nombre exclusivamente del 'interés público'."

Por los fundamentos antes expresados concurrimos con el resultado al que llega hoy la Mayoría en el presente caso.

                              FRANCISCO REBOLLO LOPEZ
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Peticionario

      v.                                    CE-93-641

Gualberto Negrón Martínez
y otros

    Acusados



Opinión Concurrente emitida por el Juez Asociado SEÑOR CORRADA DEL RIO



       San Juan, Puerto Rico, a 27 de febrero de 1998.

       Concurrimos con la Sentencia dictada en el día de hoy por este Tribunal, no porque se aplique a este caso el principio del "fruto del árbol ponzoñoso", el cual entendemos inaplicable; ni porque la confiscación fuese ilegal por razón de haber surgido como consecuencia de una orden de allanamiento ilegal, la cual no había sido impugnada al momento en que se efectuó la misma. Concurrimos por entender que es inconstitucional el artículo 3(1)(c) de la Ley Núm. 93 de 13 de julio de 1988, conocida como la Ley Uniforme de Confiscaciones (en adelante la "Ley Núm. 93"), 34 L.P.R.A. sec. 1723a, en tanto en cuanto permite la confiscación de bienes inmuebles sin notificación y vista previa. La evidencia inculpatoria descubierta como resultado de una confiscación ilegal por razón de su inconsti-

tucionalidad, es inadmisible en evidencia y debe ser suprimida.

Los hechos del caso están relacionados en la Sentencia. No los repetiremos aquí. Explicamos nuestra posición.

I

Dispone la Quinta Enmienda de la Constitución Federal:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb; nor shall be compelled in any ciminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." (Enfasis suplido)

Dispone la Sección Núm. 1 de la Decimocuarta Enmienda de la Constitución de Estados Unidos:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (Enfasis suplido)

El Tribunal Supremo Federal ha expresado, reiteradamente, que el debido proceso de ley aplica a Puerto Rico, bien sea a través de la Quinta o la Decimocuarta Enmienda de la Constitución de los Estados Unidos. Véase Ex. Bd. of Eng. Arch. and Sur. V. Flores de Otero, 426 U.S. 572, 599—601 (1976); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 668, n. 5 (1974); y Fornaris v. Ridge Tool Co., 400 U.S. 41 (1970).

Dispone la Sección 7 del Artículo II de la Constitución de Puerto Rico:

Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo.

Constitución de Puerto Rico, Art. II, Sec. 7. (Enfasis suplido).

A su vez, reza la Cuarta Enmienda de la Constitución de Estados Unidos:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Las cortes federales han resuelto que la protección provista por la Cuarta Enmienda es aplicable a los procedimientos civiles de confiscación de propiedad por parte del Estado. Véase Austin v. U.S., 509 U.S. 609 (1992); U.S. v. Showalter, 858 F.2d 149 (3rd Cir. 1988); United States v. $128,035.00 in US Currency, 628 F. Supp. 668 (S.D. Ohio 1986); U.S. v. TWP 17 R4, 970 F.2d 984 (1st Cir. 1992); Applicaton of Kingsley, 614 F.Supp. 219 (D.C. Mass. 1985); U.S. v. Parr, 716 F.2d 796 (11th Cir. 1983); U.S. v. Pappas, 613 F.2d 324 (1st Cir. 1979); One Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965); y Boyd v. U.S., 116 U.S. 616, 634 (1886).[8]

Por su parte, la Sección 10 del Artículo II de la Constitución de Puerto Rico establece:

"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones, y allanamientos irrazonables.
No se interceptará la comunicación telefónica.
Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

_____

[8]A esos efectos, se expresó elocuentemente la Corte Federal para el Distrito de Ohio en U.S. v. $128,035.00 in US Currency, supra, pág. 672, de la siguiente manera:

"In considering the claim that seizure of real property [...] violates the Fourth Amendment, the Court [...] notes that the Fourth Amendment applies to the forfeiture provisions [...] because of the statute's punitive, quasijudicial nature. [...] Thus, the statute must first comply with the various procedural requirements imposed by the Fourth Amendment."

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales." (Enfasis suplido) Const. de Puerto Rico, Art. II, Sec. 10.

Es claro que las aludidas disposiciones constitucionales persiguen garantizarle a cada persona la debida protección de las leyes, en su función sustantiva y procesal, antes de que se le prive de su propiedad. Nótese, además, que los procedimientos civiles de confiscación potencian los derechos ofrecidos por la Sección 10 del Artículo II de la Constitución de Puerto Rico y la Cuarta Enmienda de la Constitución de Estados Unidos. Véase H.M.C.A., Inc., v. Colón Carlo, Op. de 30 de junio de 1993, 93 J.T.S. 112, y E.L.A. v. Coca Cola Bottling Co., 115 D.P.R. 197 (1984).

Hemos resuelto, además, que los requisitos constitucionales del debido proceso de ley son aplicables a los procedimientos de embargo y prohibición de enajenar. Rodríguez & Co. v. Lee Stowell, Op. de 30 de junio de 1983, 93 J.T.S. 111; Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423 (1974); y Fuentes v. Shevin, 407 U.S. 67 (1972). Las exigencias del debido proceso aplican a los embargos, independientemente de que la incautación sea temporera. Fuentes v. Shevin, supra, ante, pág. 86; North Georgia Finishing v. Di-Chen, 419 U.S. 601 (1975).

Al examinar lo requerido por el debido proceso de ley, encontramos que la Corte Suprema de Estados Unidos estableció en Mathews v. Eldridge, 424 U.S. 319 (1976), los tres criterios que deben sopesarse al determinar cuál es el proceso debido para privar a un individuo de algún derecho protegido.[9] Al respecto se examina: (1) el interés afectado por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Véase: Vélez Ramírez

---

[9]Véase también Mitchell v. W. T. Grant Co., supra , Sniadach v. Family Finance Corp., supra;  y Fuentes v. Shevin, supra.

v. Romero Barceló, 112 D.P.R. 716 (1982). A la luz de los criterios de Mathews, la jurisprudencia ha establecido diversos procedimientos para satisfacer las exigencias del debido proceso. Entre los requisitos que debe cumplir todo procedimiento adversativo se encuentran: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado; y (7) que la decisión se base en el récord. Rotunda, Nowak & Young, Treatises of Constitutional Law: Sustance and Procedure, Vol. II West Publishing Co., Minn. 1986, pág. 250. No obstante, aún cuando "[...] el debido proceso de ley no es abstracción apocalíptica que de sólo invocarlo infunda temor de Dios al tribunal y paralice al adversario, Domínguez Talavera v. Tribunal Superior, supra, pág. 428; Pueblo v. Pérez Santaliz, 105 D.P.R. 10, 23 (1976); y Pueblo v. Andréu González, 105 D.P.R. 315, 320 (1976), el mismo es resguardo infranqueable contra privaciones arbitrarias de la propiedad". Cuevas Segarra, Práctica Procesal Puertorriqueña, Vol. II, San Juan, Publicaciones J.T.S., 1980, pág. 337-338.

Como vertiente del concepto del debido proceso de ley, la jurisprudencia interpretativa ha consagrado el derecho fundamental de toda persona a ser oída antes de ser despojada de algún interés protegido; esta oportunidad de ser oído debe ser en: "a meaningful time and a meaningful manner". Mathews v. Eldridge, supra, pág. 333; y Joint AntiFascist Refugee Committee v. McGrath, 341 U.S. 123 (1951). Véase también Henry Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267 (1975). La privación de la libertad o propiedad sin notificación u oportunidad de ser oído se ha considerado siempre ajena al debido proceso y en ocasiones es fuente de responsabilidad civil. Luger v. Edmonson Oil Co., 457 U.S. 922 (1982), Mullane v. Central Manover Tr. Co., 339 U.S. 306 (1950). Un estatuto puede prevalecer sólo si contiene garantías procesales suficientes que permitan que la parte afectada pueda ser oída antes de que se adjudique definitivamente el derecho

involucrado, Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974), excepción hecha en aquellas situaciones en que existen circunstancias extraordinarias que justifiquen lo contrario. Calero-Toledo v. Pearson Yacht Leasing Co., supra. A esos efectos, el Profesor Lawrence Tribe, nos dice:

> "A **prior hearing** had been required by the traditional conception of procedural due process under the precept that one should be able to continue living in quiet enjoyment of liberty or property unless and until there has been a fair determination that the state is entitled to intrude upon that situation of repose". (Énfasis suplido.) Lawrence H. Tribe, American Constitutional Law, Foundation Pres., Inc., Nueva York, 2da edición, pág. 673.

A la luz de estos preceptos constitucionales, examinemos el estatuto que rige la confiscación de bienes por parte del Gobierno de Puerto Rico. La vigente Ley Núm. 93, supra, establece, de la siguiente manera, las circunstancias en las que procede la confiscación de propiedad por parte del Estado:

> "Toda propiedad que sea utilizada en relación a la comisión de delitos graves y de aquellos delitos menos graves en que por ley se autorice la confiscación, cuando tales delitos graves y menos graves estén tipificados en el Código Penal del Estado Libre Asociado de Puerto Rico, secs. 3001 et seq. del Titulo 33 de L.P.R.A., en la leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones, así como en otras leyes y aquella propiedad que esté sujeta a una sentencia de confiscaciones que así lo autorice, será confiscada en favor del Estado Libre Asociado." (Enfasis suplido) 34 L.P.R.A. sec. 1723.

La Ley Núm. 93 califica para sus efectos las propiedades a ser confiscadas, de la siguiente manera:

> "Para fines de este Capítulo el término `propiedad´ incluye bienes muebles o inmuebles, derechos, privilegios, intereses, reclamaciones y valores, dinero en efectivo, vehículos y cualquier otro medio de transportación, utensilios, artefactos, máquinas, equipo, instrumentos, y cualquier otro objeto o bien análogo." Ibid.

Esta Ley también establece el procedimiento a ser seguido para la confiscación de la propiedad. Al respecto dicta la sección 3 (11)(c) de la Ley Núm. 93:

> "La ocupación de la propiedad sujeta a confiscación se llevará a cabo por la agencia del orden público o el funcionario a cargo de la implantación del Capítulo, por sí o por conducto de sus delegados, policías, o agentes del orden público mediante orden de un magistrado o tribunal competente o sin previas orden del tribunal en los siguientes casos:

(a) Cuando la ocupación se efectúa mientras se lleva a cabo un arresto; o

(b) cuando la ocupación se efectúa en virtud de una sentencia judicial; o

(c) <u>cuando la propiedad a ocuparse haya sido utilizada en relación a la comisión de cualquiera de los delitos que se expresan en la sección 1273 de esta Parte, previa orden del funcionario a cargo de la implantación de la ley aplicable o sus delegados.</u>

El funcionario bajo cuya autoridad se efectúa la ocupación o la persona en la que él delegue notificará el hecho de la ocupación y la tasación o valor estimado de la propiedad ocupada a las personas siguientes:

(a) Aquellas que por las circunstancias, información o creencia, el funcionario considere como dueños" [...] 34 L.P.R.A. sec. 1723a. (Enfasis suplido)

Al interpretar esas disposiciones de ley, debemos tener presente el caso de <u>Pueblo v. González Cortez</u>, 95 D.P.R. 164 (1967), en el cual expresamos que las "confiscaciones no son favorecidas por las cortes y los estatutos autorizándoles son interpretados restrictivamente".  En <u>Carlo v. Srio. de Justicia</u>, 107 D.P.R. 356 (1978), determinamos que, dada la naturaleza punitiva de la confiscación, los estatutos que autorizan esa medida en cuanto a la propiedad de un acusado deben ser interpretados restrictivamente de manera favorable a éste.  Esa norma de interpretación fue aplicada a la vigente Ley Núm. 93, <u>supra</u>, en <u>Del Toro Lugo v. E.L.A.</u>, Op. de 12 de septiembre de 1994, 94 J.T.S. 119.

II

En <u>United States v. Good Real Property</u>, 510 U.S. 43 (1993), el Tribunal Supremo Federal se expresó sobre la controversia de si la Cláusula de Debido Proceso de Ley contenida en la Quinta Enmienda de la Constitución Federal requiere que se celebre vista, antes de efectuar el embargo de una propiedad inmueble, para que su titular reciba la oportunidad de expresar su posición al respecto.  El Tribunal determinó que la vista previa es un ingrediente indispensable cuando se pretende confiscar un bien inmueble.

En el citado caso, agentes de la policía del Estado de Hawaii ejecutaron una orden de registro en el hogar del señor Daniel Good. En los predios encontraron varias sustancias controladas, constitutivas de evidencia inculpante de delito. Seis meses más tarde, Good presentó una alegación de culpabilidad y fue sentenciado a un año de encarcelación, cinco años de probatoria, una multa de $1,000.00 y el embargo de $3,187.00 que fueron encontrados en los predios allanados. Cuatro años y medio después del registro de la residencia, al amparo de lo dispuesto en 21 U.S.C. sec. 881(a)(7)[10], el Gobierno Federal instó una acción in rem para la confiscación de esa propiedad inmueble, bajo el fundamento de que la misma fue utilizada para cometer un crimen federal. En un procedimiento ex parte, un magistrado federal encontró que el Gobierno Federal cumplió con el peso de probar causa probable de que Good había empleado su casa para fines delictivos, por lo que ordenó que se procediera con la confiscación del inmueble.

El Gobierno Federal confiscó, de esta manera, la propiedad, sin proveerle a Good notificación previa o vista adversativa. Good presentó ante la Corte de Distrito de los Estados Unidos para el Distrito de Hawaii, una moción para recobrar la propiedad y una contestación a la

---

[10]Provee la parte pertinente de ese estatuto federal 21 U.S.C. sec. 881(a)(7):

"(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(7) All real property, including any right, title, and interest (including any leasehold interest)

continúa...

3...continuación

in the whole of any lot or tract of land and any appurtenances or improvements, which is used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

demanda instada por el Gobierno, arguyendo que el embargo le privó de sus derechos de Debido Proceso de Ley. El Tribunal de instancia emitió sentencia sumaria y autorizó la confiscación. Inconforme, Good acudió a la Corte de Apelaciones para el Noveno Circuito Federal, la cual revocó la sentencia recurrida, por entender que la confiscación

constituyó una violación de la Cláusula de Debido Proceso de Ley.

El caso fue entonces elevado al Tribunal Supremo Federal. Ante ese foro, el Gobierno Federal argumentó que el haber respetado los derechos de Good, según concedidos por la Cuarta Enmienda Federal, constituyó debida y suficiente protección constitucional en relación a la confiscación. En la alternativa, el Gobierno Federal arguyó que una confiscación en cumplimiento de las leyes federales contra la distribución de drogas en nuestra sociedad configura una excepción a lo requerido por el Debido Proceso de Ley. Ambos argumentos fueron desfavorecidos.

El Tribunal Supremo Federal razonó en dicho caso que uno de los pilares fundamentales del derecho al Debido Proceso de Ley, según es garantizado por la Constitución, es que una parte en riesgo de ser privada de un derecho o propiedad sea notificada y se le ofrezca la oportunidad de expresarse en su defensa. Véase United States v. $8,850, 461 U.S. 555, 562 n.12 (1983); Fuentes v. Shevin, 407 U.S. 67, 82 (1972); y Mullane v. Cenral Hanover Bank & Trust, 339 U.S. 306, 313 (1950). Se evaluó que, ciertamente, la confiscación de la propiedad inmueble de Good constituía una privación de sus derechos sobre propiedad, lo que activó la protección de la Cláusula de Debido Proceso.

En Del Toro Lugo v. E.L.A., supra, expresamos que la esencia de la decisión de United States v. Good Real Property, supra, es que la confiscación de un bien inmueble activa la protección del debido proceso y requiere que se provea notificación y vista previa. De manera que la Cláusula de Debido Proceso de Ley fue interpretada para que se le extendiera una protección mayor a la confiscación gubernamental de un bien inmueble, que la que se le concede normalmente a los bienes muebles. Véase United States v. Real Property Located at Incline Village, 976 F. Supp 1321 (D. Nev. 1997) y 976 F. Supp 1327 (D. Nev. 1997).

Al respecto de esa distinción, el Tribunal Supremo Federal expresó en Calero-Toledo v. Pearson Yacht Leasing Co., supra, a la pág. 679, que

un bien mueble es el "sort [of property] that could be removed to another jurisdiction, destroyed or concealed, if advance notice of confiscation were given". Ese foro estableció que la protección que requiere vista previa no es activada cuando el bien embargado es de naturaleza mueble.[11] Ese caso versaba sobre el embargo de un yate, por lo que se podía embargar el mismo antes de celebrar vista, para evitar que éste fuera escondido o trasladado fuera de la jurisdicción.

Ya que la propiedad mueble carga consigo un riesgo de que la confiscación pueda ser inejecutable si la parte contra quien se tramita recibiese notificación previa, la Corte Suprema Federal en Calero-Toledo v. Pearson Yacht Leasing Co., supra, justificó la misma sin la notificación y vista previa.

En United States v. Good Real Property, supra, el Tribunal Supremo Federal señaló que el bien inmueble no encaja dentro de la excepción previamente creada en Calero-Toledo v. Pearson Yacht Leasing Co., supra, pues, al no existir el riesgo inherente al bien mueble, la confiscación del inmueble requiere una notificación previa, con el propósito de que se le brinde a la parte afectada la oportunidad de acudir al tribunal mediante vista. Decidió la Corte:

> "In sum, [b]ased upon the importance of the private interests at risk and the absence of countervailing Government needs, we hold that the seizure of real property under 881(a)(7) is not one of those extraordinary instances that justify the postponement of notice and hearing. Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture." United States v. Good Real Property, supra, pág. 508-509.

El caso de autos, al igual que el de United States v. Good Real Property, supra, afecta un bien inmueble. El Tribunal Supremo Federal encontró que los recursos que tendría que dedicar el gobierno al

---

[11]Nótese que, al momento del embargo del yate de Calero-Toledo v. Pearson Yacht Leasing Co., supra, el estatuto de Puerto Rico entonces vigente, que facultó el embargo, 24 L.P.R.A. sec. 2512, y el estatuto federal que le sirvió de base, 21 U.S.C. sec. 881, autorizaban el embargo de bienes muebles solamente. No fue hasta una década más tarde que el estatuto federal de embargo fue enmendado para permitir el embargo de propiedad inmueble. Véase 21 U.S.C. sec. 881(a)(7).

efectuar la notificación y celebrar la vista previa a la confiscación no son significativamente onerosos, por lo que no se justifica obviar estos importantes mecanismos de protección constitucional.

Lo establecido como derecho por la Quinta Enmienda de la Constitución Federal, según su contenido y su interpretación por el Tribunal Supremo Federal, constituye una garantía que es ofrecida, además, por la Sección 10 del Artículo II de nuestra Constitución. E.L.A. v. Coca Cola Bottling Co., supra. Decretaríamos, por tanto, la inconstitucionalidad del artículo 3(1)(c) de la Ley Núm. 93, supra, en lo que concierne a la confiscación de bienes inmuebles sin notificación y vista previa.  Se violaron los derechos de debido proceso de ley de los peticionarios, al no haber sido notificados ni haber tenido la oportunidad de una vista, antes de la confiscación de su propiedad inmueble.

El caso de autos tampoco presenta circunstancias excepcionales que justifiquen un procedimiento ex parte para la confiscación de un bien inmueble.  Nuestro sistema de derechos constitucionales desfavorece los procedimientos ex parte cuando en juego se encuentran el derecho de propiedad inmueble de una parte que no tuvo la opción de acudir al tribunal para proteger sus intereses.  Inspira nuestro criterio la indeleble expresión del Juez Félix Frankfurter del Tribunal Supremo de Estados Unidos en su opinión concurrente en Joint Anti-Fascist Refugee Committee v. McGrath, supra, a la pág. 171-72 (1951):

> "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights [...]  No better instrument has been devised for arriving at truth than to give a person at jeopardy of serious loss notice of the case against him and oportunity to meet it."

III

Nos resta evaluar la admisibilidad de la evidencia descubierta en los predios confiscados.  Es nuestro criterio que la evidencia obtenida durante la confiscación ilegal de la propiedad, es inadmisible en términos probatorios contra los peticionarios.

Como expusimos anteriormente, la Sección 10 del Artículo II de la Constitución de Puerto Rico contiene el mandamiento de que la "evidencia obtenida en violación de esta sección será inadmisible en los tribunales". De esta Sección emerge la "regla de exclusión", la cual sostiene que toda evidencia obtenida ilegalmente no debe ser admitida para inculpar a una parte imputada de haber cometido delito. Sobre esa regla, expresamos en Toll v. Adorno Medina, Op. de 29 de abril de 1992, 92 J.T.S. 49, a la pág. 9429:

> "[P]odemos decir que la regla de exclusión enmarca tres propósitos ínsitos en el Art. II, Sec. 10. Primero, disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional (`deterrence´). Se reconoce que este elemento disuasivo realmente es el más fundamental. Segundo, integridad judicial. Los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida. Y tercero, impedir que el Gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el gobierno."

De conformidad al requerimiento constitucional, la evidencia que fue obtenida mediante la confiscación ilegal de la residencia de los peticionarios es inadmisible. Esa conclusión es inevadible, pues otra ciertamente constituiría una fractura a los pilares de la protección que ofrece nuestra Constitución.

IV

Por las razones expuestas, hemos reconsiderado la Sentencia emitida por este Tribunal el 30 de abril de 1997; declararíamos inconstitucional el artículo 3(1)(c) de la Ley Núm. 93, supra, en tanto en cuanto permite la confiscación de bienes inmuebles sin notificación y vista previa; revocaríamos la Resolución emitida por el tribunal de instancia el 8 de octubre de 1993, en cuanto a su determinación de la legalidad de la confiscación y la constitucionalidad del artículo 3(1)(c) de la Ley Núm. 93, supra; decretaríamos, además, que la evidencia inculpatoria descubierta como resultado de la confiscación ilegal es inadmisible en evidencia. Por estas consideraciones concurrimos con la Sentencia dictada en el día de hoy por este Tribunal.

Baltasar Corrada del Río
Juez Asociado



Baltasar Corrada del Río
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                    CE-93-641      Certiorari

Gualberto Negrón Martínez
y otros

    Acusados

Opinión Disidente del Juez Asociado señor Negrón García
(En reconsideración)

San Juan, Puerto Rico, a 27 de febrero de 1998

Reiteramos nuestro criterio disidente expuesto en Pueblo v. Negrón Martínez (CE-94-174), res. en 30 de abril de 1997, de que fue válido el allanamiento realizado el 4 de febrero de 1993 en la residencia de los acusados Negrón-Torres, en virtud de orden judicial.

Aclarado este extremo, no tenemos dificultad alguna en reconocer la aplicación directa a nuestro ordenamiento de la **regla general** establecida en U.S. v. James Daniel Good Real Properties, et al., 510 U.S. 43, 126 L. Ed. 2d. 491, 114 S. Ct. 492 (1993), de que **para confiscar**

**un bien inmueble**, es menester una vista judicial previa, con notificación a sus dueños.

Decimos regla general, ya que dicha decisión, (pág. 509), reconoció posibles excepciones para el Estado prescindir de ese trámite y, a posteriori, justificar la confiscación si a la luz de las circunstancias envueltas, demuestra no haber tenido disponibles métodos menos restrictivos o que eran insuficientes para proteger satisfactoriamente los intereses gubernamentales. Bajo esta óptica, entre otras, cabrían las siguientes excepciones: inminente pérdida de la propiedad mediante una posible venta, de su faz válida, a un tercero inocente protegido bajo los principios de derecho registral; destrucción física de la propiedad; su uso continuo para fines delictivos e ilícitos (tales como punto de drogas, imprenta de bolita, etc.), sin que exista tiempo para obtener una orden judicial de registro y allanamiento.


ANTONIO S. NEGRON GARCIA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El PUEBLO DE PUERTO RICO

    Peticionario

        vs.                          CE-93-641      CERTIORARI

GUALBERTO NEGRON MARTINEZ
Y OTROS

    Acusados


Opinión Disidente emitida por el Juez Asociado señor Fuster Berlingeri.


San Juan, Puerto Rico, a 27 de febrero de 1998.


I


El 30 de abril de 1997 emitimos una sentencia mediante la cual se confirmó un dictamen de instancia, en virtud del cual se había denegado antes una moción de supresión de evidencia presentada por los acusados en el caso de autos. El material delictivo en cuestión se ocupó en una residencia cuando el Ministerio Público ejecutaba una orden de confiscación de esa residencia dictada por el Secretario de Justicia de Puerto Rico. Junto con la aludida sentencia emitida por este Tribunal, acompañamos una opinión de conformidad, en la que expresamos nuestras razones por las cuales no

procedía la supresión solicitada. Vease ___ D.P.R. ___, 97 JTS 54.

Posteriormente, en reconsideración, los acusados plantearon ante nos un nuevo fundamento para la supresión en cuestión. Alegaron que era inconstitucional la disposición legislativa bajo la cual se emitió la orden de confiscación de la propiedad en la cual se ocupó el material delictivo. Este nuevo planteamiento fue acogido por uno de los miembros de este Tribunal que originalmente había votado a favor de denegar la supresión solicitada. En consecuencia de ello, ahora este Foro, por voto dividido, ordena dicha supresión.

Yo disiento de esta decisión, por las razones que expresé antes en mi opinión de conformidad del 30 de abril de 1997, y por las que formulo ahora relativas a mi criterio de que la disposición aludida no es inconstitucional. Veamos.

II

En ocasiones anteriores, hemos reiterado la necesidad de atenuar la severidad del instrumento de la confiscación, y hemos reconocido que no es favorecido por los tribunales, por lo que los estatutos que lo autorizan deben ser interpretados restrictivamente.[12] Tales pronunciamientos los hemos hecho en casos que involucraban la confiscación de propiedad de terceros inocentes, en los cuales la incautación de los bienes en cuestión por el Estado no cumplía con "los propósitos de disuasión que tuvo el legislador de hacerle cara la conducta criminal al empresario que se dedica al tráfico de drogas".[13]

En el caso de autos, la situación que nos concierne no involucra a posibles terceros inocentes. Por el contrario, tiene que ver

---

[12] Gen. Accident Ins. Co. v. E.L.A., op. de 22 de noviembre de 1994, 139 D.P.R. ____, 94 JTS 140; Alvenre Corp. v. Srio. de Justicia, sent. y op. de conformidad de 18 de junio de 1992, 131 D.P.R. ___, 92 JTS 79.
[13] Alvenre Corp. v. Srio. de Justicia, supra.

precisamente con individuos alegadamente dedicados a actividades ilícitas. Aquí el instrumento de la confiscación es un arma importante en la lucha contra la terrible actividad criminal que conocidamente azota nuestra comunidad. Por ello, tenemos la obligación de ser particularmente cuidadosos de no privar al Estado innecesariamente de esa arma importante.

## III

Se alega que es inconstitucional una disposición de la Ley Uniforme de Confiscaciones, que autoriza al Secretario de Justicia de Puerto Rico a emitir una orden para confiscar una propiedad inmueble que había sido utilizada para actividad criminal, sin una vista judicial previa a tal incautación. Se aduce que la inconstitucionalidad de dicha disposición surge de lo resuelto por el Tribunal Supremo de Estados Unidos en U.S. v. Good Real Property, 510 US 43 (1993).

No cabe duda de que este Foro debe interpretar las disposiciones de nuestra propia Carta de Derechos "de manera compatible con la protección que ofrecen a esas libertades básicas y garantías personales iguales o similares disposiciones de la Constitución de los Estados Unidos, y no en menor grado de protección, según éstas son o sean interpretadas y aplicadas por el Tribunal Supremo de los Estados Unidos," RCA v. Gob. de la Capital, 91 D.P.R. 416, 427 (1964). Ciertamente, son vinculantes para este Tribunal, las decisiones pertinentes del más alto foro judicial federal.

Lo anterior no significa, sin embargo, que estemos obligados a ser "muñeco de ventrílocuo"[14]. Debemos aplicar las decisiones aludidas en

---

[14] En el ámbito judicial, el concepto de "ventriloquist's dummy" fue formulado por el Juez Jerome Frank para describir la obligación de los jueces federales de aplicar el derecho estatal en los casos en que ello es pertinente. Richardson v. C.I.R., 126 F 2d 562, 567 (1942). Se adopta analógicamente aquí, para referirnos a la obligación de jueces estatales respecto al derecho federal.

nuestra propia jurisdicción, pero podemos hacerlo con discernimiento. Nuestro compromiso es propiamente con los valores y principios jurídicos de la Carta de Derechos de la Constitución de Estados Unidos, según los interprete el Supremo federal, pero nada nos requiere corear al dedillo sus dictámenes particulares. No tenemos que extender una decisión del Tribunal Supremo de Estados Unidos a una situación particular en Puerto Rico, si es claro que el propio foro federal no lo haría.

La situación que nos concierne aquí es circunstancialmente muy distinta de la que tuvo ante sí el Supremo norteamericano en U.S. v. Good Real Property, supra. Se trata de situaciones claramente distinguibles. En el caso aludido, la confiscación de la propiedad inmueble por el Estado ocurrió casi cinco años después de haberse ocupado drogas en ésta. Mas aun, al momento de la confiscación, la propiedad estaba en la posesión de terceros, quienes la usaban para fines enteramente lícitos. No existía allí razón alguna para haber ordenado la confiscación sin una vista judicial previa. En el caso de autos, en cambio, la confiscación se ordenó pocos días después de haberse ocupado material ilícito en la propiedad en cuestión. Esta continuaba en manos de su dueño, que había sido acusado por la comisión de delitos; y al confiscarse la propiedad, ésta continuaba usándose aún para fines criminales. Se justificaba, pues, que la vista judicial que requiere el debido proceso de ley, se celebrase después de la incautación.

En su opinión en U.S. v. Good Real Property, que fue una decisión con voto de 5-4, la propia mayoría del Supremo federal reconoció que existen situaciones en las cuales puede posponerse la vista judicial hasta después de la incautación. Una de éstas es cuando ello es necesario para evitar que continúe la actividad criminal en la propiedad incautada. Tal es la situación en el caso de autos. Aquí, evidentemente, el allanamiento previo de dicha propiedad no había sido suficiente para evitar su continuado uso para fines delictivos. La expedita incautación de ésta era necesaria para conculcar su uso en actividades criminales.

Estaba justificado, pues, posponer la vista judicial.

Más aun, la mayoría en U.S. v. Good Real Property, señaló que la vista judicial previa a la incautación existe para evitar que dueños inocentes sean privados de su propiedad por error o arbitrariamente. Tales fines evidentemente no son de aplicación al caso de autos. En éste, la celebración de una vista judicial previa a la incautación no hubiese servido ningún propósito público importante.

Finalmente, en vista de que el derecho al debido proceso de ley es de naturaleza circunstancial, Connecticut v. Doehr, 111 S. Ct. 2105 (1991); Pueblo v. Andréu González, 105 D.P.R. 309 (1976), deben tenerse en cuenta otras circunstancias, muy particulares a Puerto Rico, que no estaban presente en U.S. v. Good Real Property. Estas otras circunstancias son relativas a la protección del interés público, que es uno de los elementos que el Tribunal Supremo de Estados Unidos ha reconocido debe sopesarse al decidir si procede una confiscación sin vista judicial previa.[15] Nuestro país se encuentra afligido por una horrenda plaga de actividad criminal de inconmensurable dimensión. La generalidad de las comunidades norteamericanas no encaran ni sufren nada parecido. En efecto, según informes federales, y de las Naciones Unidas, pocos lugares en el mundo tienen problemas de criminalidad de la magnitud de los que experimenta nuestra isla. Recientemente, en una reunión internacional, se catalogó a Puerto Rico como uno de los paraísos de los narcotraficantes.

Mas aun, es claro que nuestro gobierno insular no tiene la capacidad para encarar la abrumadora realidad del crimen que tiene el gobierno federal. Este tiene recursos y aptitudes que el nuestro carece.

Estos dos datos de evidente comprobación hacen nuestra situación muy distinta también de la del caso de U.S. v. Good Real Property. En éste, el poderoso gobierno federal no tenía razones válidas para actuar como lo

---

[15] Mathews v. Eldridge, 424 U.S. 319 (1976).

hizo, en una instancia en la cual la celebración de la vista judicial previa no presentaba riesgo o amenaza alguna a la protección del interés público.  Tal no es el caso de Puerto Rico en situaciones como la de autos.  La gravedad del problema del crimen en nuestra isla, y las limitaciones de nuestros recursos policíacos, le dan un carácter urgente a confiscaciones como la que aquí nos concierne.  Para nuestro país, privar al Estado de usar expeditamente el instrumento de la confiscación como arma contra los criminales, sólo significa empeorar la grave crisis de abuso e indefensión que sufre nuestra gente, algo que ciertamente no ocurría en la situación concreta del caso de U.S. v. Good Real Property.

Como a conciencia no puedo votar por la aplicación ciega de U.S. v. Good Real Property a la distinguible situación de autos, y como estimo que el material delictivo en cuestión fue ocupado lícitamente durante una confiscación válida del inmueble donde se encontraba, disiento de lo que ahora, por razones diversas, dispone una mayoría del Tribunal.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO